IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| ANNA BARAN, | : |
| Plaintiff, | : |
| v. | : Civil No. 1:22-cv-04391 (RBK-AMD) |
| ASRC MSE, et al., | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon *pro se* Plaintiff Anna Baran's Motion to Remand (ECF No. 7) and Defendant Mission Solutions, LLC (MSE) (improperly identified as ASRC MSE)'s Motion to Dismiss (ECF No. 8). For the reasons expressed below, Plaintiff's Motion to Remand is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**.

I. BACKGROUND

This case arises from Plaintiff's former employment with Defendant MSE, a defense contractor. In a prior litigation, *Anna Baran v. ASRC Federal, Missions Solutions*, Case No. 17-cv-07425 (hereinafter "*Baran I*"), Plaintiff alleged that Defendant wrongfully terminated and subsequently defamed her after receiving a report that she threatened gun violence upon Defendant's workplace. *See Baran I*, ECF No. 1, Ex. B at 2–3, 5–6, 9–10. She asserted that the employee who made the report, Rose Wells, did so falsely, and that Defendant used the report as "a pretext" to fire her. *See id.* at 2, 9–10. Plaintiff also alleged that an employee in Defendant's Human Resources Department, Francis McKenna, provided this false report to Plaintiff's

1

potential employers. *See id*. at 5. Plaintiff alleged that one potential employer informed her that it "would not be able to extend an employment offer to her based on what they were told by [Defendant]." *Id*. at 6.

Plaintiff filed her first amended complaint in *Baran I* on October 12, 2016, bringing claims against Defendant for defamation, libel, and slander (Count I); defamation, libel, and slander *per se* (Count II); New Jersey Law Against Discrimination ("NJLAD") hostile work environment (Count III); and retaliatory discharge in violation of the NJLAD (Count IV). *Id*. at 6–10. Plaintiff also named Wells, McKenna, Sue Goldberg, and ABC Business Entities 1-100 as co-defendants. (*Id.* at 1). On September 15, 2017, Defendant removed the action to this Court. *Baran I*, ECF No. 1.

Plaintiff presented her case against Defendant during a four-day jury trial that began on March 4, 2019. *Baran I*, ECF No. 77 at 14. Her case stated that Defendant violated the NJLAD when it terminated her in retaliation for her complaints about discriminatory treatment by Sue Goldberg and defamed her by filing a report containing false information on the United States Department of Defense (DOD)'s Joint Personnel Adjudication System (JPAS), which is the DOD's system of record for security clearance processing. *Id.* Plaintiff further presented evidence that Defendant's provided reason for termination was pretextual and that Defendant in fact terminated her in retaliation for her previous complaints that Goldberg was discriminating against her on the basis of her Polish national origin. *Id.* Plaintiff also presented evidence that the JPAS report entry was knowingly false and defamatory. *Id.*

At the close of Plaintiff's case on March 6, 2019, Defendant moved for Judgment as a Matter of Law. *Baran I*, ECF No. 59. Defendant argued that Plaintiff's defamation and retaliation claims should not go to the jury because they were factually insufficient and barred by

the statute of limitations. *Baran I*, ECF No. 59 at 2–4. The Court reserved judgment on the motion until after the jury considered the claims. *Baran I*, ECF No. 77 at 14. After the jury found for Plaintiff on March 8, 2019, Defendant renewed its Motion for Judgment as a Matter of Law. *Baran I*, ECF No. 60.

On July 9, 2019, this Court granted Defendant's Motion for Judgment as a Matter of Law. *Baran I*, ECF No. 77. The Court directed entry of "(1) judgment on the jury's verdict on the NJLAD retaliation claim and (2) judgment as a matter of law in favor of Defendant on the defamation claim." *Id.* at 34. On August 5, 2019, Plaintiff filed a notice of appeal to the Third Circuit regarding the District Court's decision to grant Defendant's Motion for Judgment as a Matter of Law. *Baran I*, ECF No. 80. The Third Circuit affirmed the District Court's decision. *Baran I*, ECF No. 86.

On May 19, 2022, Plaintiff filed the instant Complaint *pro se* in *Baran v. ASRC Federal, Missions Solutions*, Case No. 22-cv-04391. (ECF No. 1-2 ("Compl."), Ex. A). Plaintiff named MSE and ABC Business Entities 1-1000 as Defendants. (*Id.* at 2). Plaintiff's Complaint is difficult to parse, and her claims and factual allegations are not clearly articulated. The Complaint purports to bring claims of "negligence and retaliation, violation of Court Order" (Count I); intentional and negligent infliction of emotional distress (Count II); "tortious interference, adverse interference, witness/evidence tampering" (Count III); "obstruction of justice/theft/abuse of power, witness/evidence tampering" (Count IV); and "cleared facility violations – comprised safety and information" (Count V). (*Id.* at 3–4). In support of these claims, the Complaint alleges facts relating to (1) Defendant's allegedly wrongful conduct in litigating *Baran I*, (2) the same alleged defamatory and retaliatory conduct that was litigated in

*Baran I*, and (3) Defendant's failure to correct the JPAS report in the time since *Baran I* was resolved.

First, the Complaint alleges that Defendant engaged in wrongful conduct in litigating *Baran I*. Plaintiff alleges that Defendant made motions for the purpose of "obstruct[ing] justice" (Compl. at 1); Defendant "misled the Superior Court judge" while the action was in state court (*id.* at 2); Defendant argued that an email from McKenna to Plaintiff was hearsay and "refused to acknowledge or provide it in [the] discovery phase" (Compl., Ex. A at 1); and Defendant "object[ed] and call[ed] it hearsay" whenever Plaintiff answered a question while testifying during trial if "the answer worked against the defendant" (*id.* at 41). Plaintiff alleges that, knowing that a piece of evidence submitted by Plaintiff had been excluded as inadmissible, the Defendant "badgered" Plaintiff about the evidence while she was on the witness stand. (*Id.* at 42). Plaintiff alleges that she was "called names, [and] mocked with continued fabricated allegations by the defendants and the Trial Judge." [1] (*Id.* at 14). Plaintiff alleges that Defendant engaged in this conduct to "further punish, retaliate, and cause additional loss to Plaintiff." (ECF No. 1-3 at 1).

Second, the Complaint reiterates facts regarding the initial publication of the JPAS report and the alleged retaliatory termination. (*See* Compl., Ex. A at 1). It alleges that "[a] JPAS report was made known and discussed and derogatory comments [were] made about Plaintiff," that "Mr. McKenna admitted to [the] communication and refused to provide plaintiff with [the] JPAS report that he created," and that "Defendants refused to update JPAS." (*Id.*).

---

[1] We note that the Complaint makes several factual allegations regarding the presiding judge in *Baran I*. The judge was not named as a party to this action, so we will disregard these allegations. In any event, the judge has absolute immunity for "actions taken in [her] judicial capacity." *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018).

Third, the Complaint alleges that, since the resolution of *Baran I*, Plaintiff has communicated with Defendant requesting it to correct the JPAS report and Defendant has declined to do so. According to the Complaint, "[a] few months after the trial, [in] June 2019, Plaintiff accepted another employment offer from [Lockheed Martin]. Again, defendants refused to assist Plaintiff, failed to follow required direction per NISPOM policy . . . [and] the employment offer was rescinded." (ECF No. 1-3 at 2). Later, "[i]n March of 2021, Plaintiff sent communication to . . . Ms. Colleen Nicholson (FSO, Director for ASRC) to request assistance [in clearing the] JPAS report. Two months passed and ASRC MSE . . . refused to respond to Plaintiff, or . . . use best efforts to resolve and clear the report in JPAS . . . ." (*Id.* at 1). The email to Nicholson is included as an exhibit to the Complaint. (*Id.* at 26). The Complaint also includes a letter from Lockheed Martin dated January 2, 2020, informing Plaintiff that the company was withdrawing its contingent offer of employment because Plaintiff had not obtained the clearance required to begin employment. (*Id.* at 41).

On June 3, 2022, Defendant was served with the new complaint. (ECF No. 8 at 4). On July 1, 2022, Defendant removed the case to this Court, asserting both federal officer jurisdiction under 28 U.S.C. § 1442 and diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at 2–4). On July 12, 2022, Plaintiff filed a motion to remand, arguing that both federal officer and diversity jurisdiction were improper. (ECF No. 7 at 1–3). On July 22, 2022, Defendants filed a motion to dismiss the complaint in accordance with Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8 at 1).

## II.    LEGAL STANDARDS

### A.  Motion to Remand

28 U.S.C. § 1441(a) allows a defendant to remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. 28 U.S.C. § 1447(c). A case that is removed shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.* To defeat a motion to remand for lack of subject-matter jurisdiction, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, where the decision to remand is a close one, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels*, 770 F.2d at 29 ("[L]ack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile[.]").

Federal officer subject matter jurisdiction permits a defendant to remove a civil action to federal court if the action is against "any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Diversity of citizenship subject matter jurisdiction "'falls within the original jurisdiction of the district court,' pursuant to § 1332(a) of Title 28 of the United States Code, and thus 'a state court case that implicates diversity jurisdiction' may generally be removed." *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (quoting *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996)). A district court may properly exercise diversity jurisdiction only if the amount in controversy exceeds $75,000 and complete diversity of citizenship exists among the adverse parties. *See* 28 U.S.C. § 1332(a).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss, we construe *pro se* filings liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). The Court must be flexible when dealing with *pro se* litigants and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). However, *pro se* litigants must still allege sufficient facts in their complaint to state a claim. *Id.* at 245. They may not "flout procedural rules" and "must abide by the same rules that apply to all other litigants." *Id.*

## III. DISCUSSION

### A. Motion to Remand

Plaintiff contends that this Court lacks proper subject-matter jurisdiction under both federal officer and diversity jurisdiction. Plaintiff states that Defendant is neither a federal officer nor an entity acting under an officer. Plaintiff also asserts that diversity of citizenship is not present here because Defendant is a citizen of New Jersey like herself. Defendant responds that federal officer jurisdiction exists because Defendant was acting under the authority of the DOD

7

when it submitted the JPAS report pursuant to federal regulations. Defendant further argues that diversity of citizenship exists because Defendant is a citizen of Alaska.

Because this Court has proper subject-matter jurisdiction under both federal officer and diversity jurisdiction, Plaintiff's Motion to Remand is denied.

### i. Federal Officer Jurisdiction

A defendant may properly remove a state court action under 28 U.S.C. § 1442(a)(1) when four conditions are met. *See Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998). First, the defendant must be a "person" within the meaning of the statute. *Id*. Second, the plaintiff's claims must be based upon the defendant's conduct "acting under" a federal office. *Id*. Third, the defendant must raise a colorable federal defense. *Id*. Fourth, there must be a causal nexus between the claims and the conduct performed under color of a federal office. *Id*.

The first three conditions are met here, as was found in the prior case. *See Baran I*, 2018 WL 3054677, at *4–6 (D.N.J. June 20, 2018). First, Defendant is a "person" within the meaning of 1442(a)(1) because Defendant is an LLC. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d. Cir. 2016). Second, Defendant also "acted under" the Secretary of Defense when it filed the report of plaintiff's termination according to the National Industrial Security Program Operating Manual (NISPOM), which was issued by the Secretary pursuant to an Executive Order. *Stephenson v. Nassif*, 160 F. Supp. 3d. 884, 887-89 (E.D. Va. 2015). Third, Defendant has a colorable federal defense because it asserts that the termination report is privileged, and it is not liable for a defamation claim related to a government-imposed duty to report. *Mission1st Group, Inc. v. Filak*, Civil Action No. 09–3758, 2010 WL 4974549, *2 (D.N.J. Dec. 2, 2010); *Becker v. Philco Corp.*, 372 F.2d 771, 775–76 (4th Cir.1967).

The fourth condition, which requires a causal nexus between a plaintiff's claims and a defendant's conduct performed under color of federal office, is also met. Plaintiff bases her claims in part on the information Defendant provided in its termination report pursuant to NISPOM. Defendant was required by the DOD to provide the report and information therein. Plaintiff subsequently made claims that Defendant's conduct caused her harm. Thus, there is a causal nexus between her claims and Defendant's conduct.

Plaintiff argues in her Motion to Remand that Defendant may not remove this matter under federal officer jurisdiction because Defendant allegedly included false information in its termination report. However, whether Defendant included false information in the report is not the relevant inquiry. The correct inquiry is whether the four requisite conditions for federal officer jurisdiction are satisfied. Because we find the four conditions are met, we conclude we have subject matter jurisdiction under 28 U.S.C. § 1442(a)(1). Removal on this basis is permitted, and Plaintiff's Motion to Remand will consequently be denied.

### ii. Diversity Jurisdiction

While a finding of diversity jurisdiction is not necessary because we have already found we have subject matter jurisdiction under 28 U.S.C. § 1442(a)(1), we will briefly determine whether diversity jurisdiction exists for the sake of thoroughness and in case of appeal. A defendant may properly remove a state court action against them under 28 U.S.C. § 1332(a) when complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. Here, both requirements are met.

An individual is a citizen of the state where they are domiciled. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (citing *Gilbert v. David,* 235 U.S. 561, 569

(1915)). Plaintiff notes in her complaint that she lives in New Jersey. Therefore, she is a citizen of New Jersey.

Citizenship of a limited liability company is determined by the citizenship of its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). When applicable, "'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Id*. (citing *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). Although, as Plaintiff points out, Defendant is based in Moorestown, New Jersey, the members of Defendant LLC are all citizens of Alaska. Defendant's sole member is ASRC Federal Holding Company, LLC, a limited liability company whose sole member is Arctic Slope Regional Corporation. (ECF No. 1, 4). Arctic Slope Regional Corporation is a corporation incorporated in Alaska with its principal place of business in Alaska. (ECF No. 10, Ex. A, at 1). Therefore, Defendant is a citizen of Alaska.

The $75,000 amount in controversy requirement is satisfied by the allegations made in the Complaint. In an action removed to federal court, "determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004). The court then must analyze the claims made within the complaint to determine whether plaintiff's monetary demands are greater than $75,000. *Morgan v. Gay*, 472 F.3d 469, 474-75 (3d. Cir. 2006). We agree with Defendant that Plaintiff's allegations relating to her termination by MSE and defamation claims that she more likely than not puts in controversy an amount greater than $75,000. (*See* ECF No. 10 at 6). The amount in controversy requirement is therefore satisfied.

Because complete diversity of citizenship between the parties exists and the amount in controversy in this case exceeds $75,000, this Court finds it has diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332(a). Having found subject matter jurisdiction exists under both federal officer and diversity jurisdiction, we deny Plaintiff's Motion to Remand.

### B. Motion to Dismiss

In deciding a motion to dismiss, we construe the *pro se* Complaint liberally and "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). Accordingly, we focus on whether the factual allegations in the Complaint can give rise to any cognizable claim, without regard to the legal theories listed on the caption page. Defendant contends that this Court should dismiss the Complaint because any claim based on the factual allegations in the Complaint is barred by res judicata and the New Jersey litigation privilege. Plaintiff responds that her claims survive a res judicata challenge because Defendant's conduct has continued since resolution of the prior litigation. She further argues that Defendant incorrectly asserts the litigation privilege. Because we agree with Defendant that Plaintiff's claims are barred due to res judicata and the litigation privilege, we will dismiss Plaintiff's Complaint.

#### i. Res Judicata

Defendant argues that the doctrine of res judicata warrants dismissal of the Complaint. "Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279 (2016) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). Dismissal under res judicata is proper only when it is "apparent on the

11

face of the complaint" that res judicata bars a certain claim or claims. *Hoffman*, 837 F.3d at 280 (quoting *Rycoline Prods. Inc, v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)).

The first and second elements of res judicata are clearly satisfied in this case. The first element is satisfied because the District Court rendered a final judgment in *Baran I* when it directed entry of judgment as a matter of law as to the defamation claim and judgment on the jury's verdict as to the retaliation claim. *See Baran I*, ECF No. 77 at 34. The second element is satisfied because Plaintiff and Defendant were both parties in *Baran I*. The only issue remaining is whether the claims in the present Complaint are "based on the same cause[s] of action" as those in *Baran I*.

In determining whether a subsequent suit involves the same claim, a court should not look to the specific legal theories asserted, "but rather the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (internal quotation marks omitted); *see also Estate of Semprevivo v. Atl.. Cty.*, 2019 WL 4187593, at *5 (D.N.J. Sept. 4, 2019) (finding res judicata bars claims where "[t]he same series of transactions underlie" the claims, even if "the legal theories are different"). The fact that a party relies on different statutes and theories of recovery or seeks different relief in each action "does not [automatically] render its claims different causes of action for res judicata purposes." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984). Instead, a court focuses on whether a party: (1) complains of the same acts; (2) alleges the same material facts in each suit; and (3) requires the same witnesses and documentation to prove such allegations. *Elkadrawy*, 584 F.3d at 173. We find that the "same series of transactions underlie" Plaintiff's defamation and retaliation claims in *Baran I* and many of the allegations raised in the present Complaint. *See Estate of Semprevivo*, 2019 WL 4187593, at *5.

As described above, the present Complaint reiterates the same facts regarding the publication of the JPAS report that were litigated in *Baran I*. (*See* Compl. Ex. A at 1). It alleges that "[a] JPAS report was made known and discussed and derogatory comments [were] made about Plaintiff," that "Mr. McKenna admitted to [the] communication and refused to provide plaintiff with [the] JPAS report that he created," and that "Defendants refused to update JPAS." (*Id.*).

In *Baran I*, Plaintiff brought defamation claims against Defendant for communicating allegedly false information about her to potential employers through the JPAS report. Plaintiff complained that Defendant "slandered, libeled, and otherwise defamed [her] causing her a special grievance (lost employment opportunities)." *Baran I*, ECF No. 1, Ex. B at 7. Specifically, she alleged that Defendant "knowingly provided substantially false information to potential employers for Plaintiff." *Id.* at 5. Likewise, in the present Complaint, Plaintiff complains that Defendant "committed defamation and slander." (Compl., at 4). She states that Defendant "refused responsibility for clearing its false [JPAS] report" and in so doing, "[c]aused plaintiff excessive financial losses" and "destroyed employment opportunities." (*Id.*).

The facts concerning Defendant's alleged defamatory conduct "are the same in both actions." *Semprevivo*, 2019 WL 4187593, at *5. In her *Baran I* complaint, Plaintiff stated that Defendant made "substantially false statements (oral or written, or both) to plaintiff's potential employer L-3 Communications." *Baran I*, ECF No. 1, Ex. B, at 5. In the present Complaint, she notes that Francis McKenna, on behalf of Defendant, spoke to L-3 Communications about Plaintiff's security clearance. (Compl. at 8). The present Complaint also alleges that L-3 Communications informed her via voicemail that the company had "look[ed] into the situation

13

with [her] clearance[,] and based on what [they had] been told[,]" they could not offer her a position. (*Id.*).

The evidence concerning Defendant's actions in publishing the JPAS report and sharing the information with potential employers are the same both here and in *Baran I*. In the present Complaint, Plaintiff attaches, in support of her allegations, the same email from Francis McKenna that was submitted as evidence in *Baran I*. (Compl. at 8). She also includes McKenna's deposition testimony, taken during the prior litigation, about the JPAS report he made and his correspondence with L-3 Communications. (*Id.* at 9–10).

The Court is convinced of "the essential similarity of the underlying events giving rise" to Plaintiff's defamation claims in *Baran I* and the present Complaint. *Elkadrawy*, 584 F.3d at 173. Therefore, we conclude that the allegations in the present Complaint regarding Defendant's publication of the JPAS report and communications with potential employers were previously litigated and must be dismissed as res judicata.

Plaintiff argues her claims relating to the JPAS report should survive Defendant's res judicata challenge because "defendants have not stopped their vile behavior against Plaintiff." (ECF No. 12 at 8). Plaintiff alleges that, since the resolution of *Baran I*, she has asked Defendant to correct the JPAS report and Defendant has declined to do so. According to the Complaint, "[a] few months after the trial, [in] June 2019, Plaintiff accepted another employment offer from [Lockheed Martin]. Again, defendants refused to assist Plaintiff, [and] failed to follow required direction per NISPOM policy . . . [and] the employment offer was rescinded." (ECF No. 1-3 at 2). Later, "[i]n March of 2021, Plaintiff sent [a] communication to . . . Ms. Colleen Nicholson (FSO, Director for ASRC) to request assistance [in clearing the] JPAS report. Two months

passed and ASRC MSE . . . refused to respond to Plaintiff, or assist, [or] use best efforts to resolve and clear the report in JPAS . . . ." (*Id.* at 1).

Although these facts are novel and were not litigated in *Baran I*, they are insufficient to substantiate a new claim for defamation because of the single publication rule. New Jersey follows "the single publication rule in defamation cases, which provides that 'a statement posted on the internet is deemed only to be published once for purposes of the statute of limitations; the limitations period does not restart every time the post is viewed.'" *See Baran I*, 401 F. Supp. 3d 471, 481 (D.N.J. 2019) (citing *Roberts v. Mintz*, 2016 WL 3981128, at *4 (N.J. Super. Ct. App. Div. July 26, 2016)). In *Baran I*, the Court directed judgment as a matter of law as to Plaintiff's defamation claim because the Court found that the claim was barred by the statute of limitations. *See Baran I*, 401 F. Supp. 3d 471, 481 (D.N.J. 2019). The present Complaint does not allege a new publication; rather, it alleges that Defendant has refused to remove the JPAS report that was the subject of *Baran I*. Because the JPAS report is considered a single publication and because we conclude that the defamation claim arising from that publication has already been litigated, Plaintiff's claim for defamation must be dismissed.

Similarly, Plaintiff's allegation of retaliation in the present Complaint must be dismissed as res judicata because it is duplicative of the retaliation claim previously resolved in *Baran I*. The present Complaint alleges "that defendants from the beginning of August 2014 acted with ill intent to further punish, retaliate, and cause additional loss to Plaintiff." (ECF No. 1-3 at 11). This allegation appears to be based on the same set of facts as Plaintiff's retaliation claim in *Baran I*, in which she alleged that she was "terminated from employment [with Defendant] in retaliation for her informing [Rose] Wells that she was planning on filing a claim with EEOC DCR." *Baran I,* ECF No. 1, Ex. C at 10. Litigation of the Complaint's retaliation-related

15

allegation would involve the same material facts and require the same evidence as the retaliation claim in *Baran I*. Therefore, the allegation of retaliatory termination in the present Complaint was previously litigated in *Baran I* and must be dismissed as res judicata.

Because we find that the Complaint's allegations of defamatory conduct and retaliation arise from the same set of facts that were previously litigated in *Baran I*, which reached final judgment and involved the same Plaintiff and Defendant, we will dismiss these allegations as barred under res judicata.

### ii. Litigation Privilege

Defendant argues the Court should dismiss Plaintiff's claims arising from Defendant's conduct in litigating *Baran I* because such claims are barred by New Jersey's common law doctrine of litigation privilege. Litigation privilege provides absolute immunity to "attorneys, parties, and their representatives" for "statements made in the course of judicial or quasi-judicial proceedings." *Thomas v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 132-33 (D.N.J. 1998) (citing *Peterson v. Ballard*, 292 N.J. Super. 757, 581 (App. Div. 1996)). In other words, a statement made by a party during a judicial proceeding is generally "absolutely privileged and wholly immune from liability." *Hawkins v. Harris*, 141 N.J. 207, 213 (1995).

New Jersey's litigation privilege applies when a communication has four elements. The privilege covers "communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 582 (D.N.J. 2001) (quoting *Hawkins*, 141 N.J. at 216). Whether the litigation privilege applies is a question of law. *Id*.

The Complaint alleges harm caused by communications made by Defendant and its counsel during the *Baran I* proceedings. The Complaint states that "[t]hroughout the 4-day trial, [in] March 2019, Plaintiff was called names, [and] mocked with continued fabricated allegations by the defendants." (ECF No. 1-3 at 4). Plaintiff further asserts that "Defendants [sic] counsel . . . engaged in continued alleged comments & laughter." (*Id.*). She also takes issue with Defendant's hearsay objections during trial. (Compl., Ex. A at 19). Plaintiff alleges that when testifying, "[e]very time [she] tried to answer, and the answer worked against the defendant, the defendant would object and call it hearsay." (*Id.* at 41). Lastly, Plaintiff alleges that Defendant "barred information/testimony, barred witnesses' testimony, blocked and silenced Plaintiffs testimony" and "destroyed evidence with a black sharpie."[2] (ECF No. 1-3 at 4–5).

We reviewed the excerpts of the court transcript Plaintiff provided as well as her other factual allegations relating to Defendant's conduct in litigating *Baran I*. We find that the communications alleged in the Complaint satisfy all four elements required for the litigation privilege to apply. The communications were made in judicial proceedings before the New Jersey State Superior Court, this Court, and the Third Circuit Court of Appeals. They were made by Defendant, Defendant's counsel, and witnesses who were all litigants or other participants authorized by law. The communications were made to achieve the object of defending against Plaintiff's claims against Defendant. Finally, the communications were made in relation to the litigation. Therefore, Plaintiff's claims against Defendant stemming from conduct during the *Baran I* litigation are barred pursuant to the litigation privilege.

---

[2] We note that the litigation privilege covers only communications, not actions. We interpret this allegation to be an allegation of a communication to the court, i.e., that Defendant requested that the court "bar[] information/testimony, bar[] witnesses' testimony, block[] and silence[] Plaintiffs testimony" and "destroy[] evidence with a black sharpie."

## IV. CONCLUSION

Because we have proper subject matter jurisdiction in this case, Plaintiff's Motion to Remand is **DENIED**. Because the claims asserted in the Complaint arise from factual allegations that are barred under either the doctrine of res judicata or New Jersey's litigation privilege, Defendant's Motion to Dismiss is **GRANTED**. An Order follows.

Dated:  3/3/2023                           /s/ Robert B. Kugler
                                           ROBERT B. KUGLER
                                           United States District Judge